By the Court. Vanderpoel, J.
The plaintiff claims that the facts which the jury were warranted in finding, and which they must have found to have attained the conclusion to which they came, were that Clement Smith, the brother of the defendant, was indebted to the plaintiff in the sum of $44 75, (amounting now, with interest, to over $50,) for a bill of clothes; that the defendant promised to pay it to the plaintiff after he received it; that he admitted that he had received the money from Clement Smith to pay this bill, and that he said he would pay it; and that he afterwards said, he should have paid it when he had the money.
The judge charged the jury, that if they found that Clement *334 Smith had remitted the money to the defendant for the purpose and with instructions to pajr the bill, which the defendant received, and that the defendant had thereupon promised the plaintiff to pay it, and had omitted so to do, then the plaintiff was entitled to a verdict; but if the promise to pay the bill was made without any remittance of the money for the purpose from Clement Smith, or without having the funds for the purpose, the plaintiff could not recover.
It is contended that the finding of the jury is so decidedly against the weight of evidence, as to call for our interference on that ground. We think not. The testimony of Bennett and Joseph Wyman is strong enough in support of the verdict, to save it from being disturbed on the ground that it is against the weight of evidence. According to their testimony, the defendant admitted that he had received the money from Clement Smith to pay the bill; that it was not then convenient, but that he would pay it; that he should have paid the same when he had the money, but that he would pay. It is true that Clement Smith, in answer to the sixth interrogatory propounded to him, says, that he never remitted to the defendant any funds to pay the bill of the plaintiff, or any bill of his whatever. The jury, it seems, took the defendant at his admission, as stated in the evidence of Bennett and Wyman. And we cannot, consistently with well established rules on this subject, molest their finding, merely because we might possibly have come to a different conclusion, had we sat in their stead.
Was the charge of the judge correct ? In Weston v. Barker, 12 John. 279,) Thompson, J., says, “ If A. deliver money to B., to be paid over to 0., the latter may recover it of B., in an action for money had and received.” That case was not as strong for the plaintiff as the present. There, the defendant received from Bowen & Robbins, on the 4th of March, 1811, two policies of insurance in trust, to pay certain specified debts, and the balance to be held subject to their order. The defendant on the same day accepted the trust. On the 15th of the same month, Bowen & Robbins, being indebted to the plaintiff, gave him an order on the defendant for such balance ; of which notice was, about the. sgme time, giyep to the defendant, The defendant after *335 wards received the amount due on the policies) and after paying the demands specified in the declaration of trust, held in his hands a balance, for which the suit was brought; and it was held, that the plaintiff might maintain an action for money had and received to recover such balance. There was not, (as in this case,) an express promise to pay the money to the plaintiff; and this, with Spencer, J., who delivered a dissenting opinion, seemed a conclusive circumstance against the plaintiff.
The defendant contends, that this is a promise to pay the debt of a third person ; and that, not being in writing, it is void; We regard it, not as a promise to pay the debt of a third person, but as a promise to pay money which the defendant had received for the use of the plaintiff, and therefore binding. In Berly v. Taylor, (5 Hill, 577,) Go wen, J., asks, “ Was there ever a doubt contained in any case, that where money was handed to B. for the uso of C., the latter may have an action for it, especially when he consents to the trust?” Again, at page 585, he puts the following case : “ A man receives money from A., with directions to pay it over to B.; is impossible, that his converting the money to his own use before B. demands it, shall defeat the claim of the latter ?”
The case of Brind v. Hampshire, (1 Mees. & Wels. 365,) has been pressed upon us by the defendant’s counsel. That tvas an action of trover for a foreign bill of exchange, drawn at Honduras. A., a resident abroad, remitted the bill to B., his agent in England, drawn by A. and specially indorsed by him to the plaintiff, with whom his children were at school, in payment of the plaintiff’s account for their board and education. B., the defendant, got the bill accepted by the drawee, and sent a letter by post to the plaintiff, stating that he had received a commission from A. to pay her some money, on account of his Children, and desired to be informed when and how it should be delivered. While the bill was in the defendant’s hands, he received directions from A. to keep it, and the proceeds in his hands, and to have a fair investigation into the plaintiff’s accounts, and after such investigation, to pay her what might be due to her. No such investigation took place, and B. detained the bill. It was held, that the plaintiff could ndt recover in an *336 action of trover. That case turned upon a principle which has no application to the present.- There, the remitter of the' bill, before it was handed over to the plaintiff, countermanded' the order to deliver it to her j and the court held, that the direction to hand over the bill to the plaintiff remained eountermandable ■ by the remitter, until it was executed,-, either by the actual delivery of the chattel or money to the remittee, or by some" binding engagement entered into between the agent and the remittee, which gave the. latter a fight of action against the former. The defendant then was regarded as- the agent of the remitter of the bill, and had done nothing except to write to the plaintiff on the receipt of the bill, that he had received i-t, stating the purpose for which it had been remitted to him-. If the defendant had collected the amount of the bill from the acceptor,- had never received any countermand from the. remitter, and, after the receipt of the money, had promised the plaintiff to pay to her the amount so received by him for her purposes; and if the plaintiff had then brought her action for money had and received, instead of trover, there would have been a most decided similitude between that case and the present ¡ and then, to use the language of Parke, Baron, in that case, “'There would have been a binding engagement between the agent and the remittee, which gives the latter a right of action against the former.” This indispensable engagement was there wanting.
In Williams v. Everett, (14 East, 582,) there was no assent on the part of the defendant to hold the money for the purposes mentioned in the letter accompanying the remittance, but, on the contrary,-an express-refusal to do so. A privity must be established between the plaintiff and defendant, as to the subject of the demand—-an assent to execute the trust which the remitter has confided to the remittee ; and- this assent must be an express or implied promise to the person to whom the money is to be paid; and if the remittee, after receiving the money, (it never having been recalled by the remitter,) promises the person for whose purpose he received it, that he will pay it over to him, we cannot but regard it as a valid promise, and one sanctioned by the best of considerations.
In Seaman v. Whitney, (24 Wend. 260,) there was no promise *337 on the part of the defendant to pay the plaintiff the proceeds of the draft which he had received for that purpose, and therefore? as Justice Nelson says, “ It was, at most, an attempt by a creditor to seize upon a fund placed by his debtor in the hands of a third person, with directions to apply it to the payment of a debt, without any communication with the creditor or understanding between them to that effect.” Here, on the contrary, there was a communication between the defendant and the creditor, and an express promise from the former to the latter, and therefore it comes within the view of the same judge, when he says, “ That in all cases, the principle on which the action must be maintained, if at all, is that the fund had been appropriated by an understanding between the debtor and creditor, assented to by the defendant; or by an express undertaking of the defendant with the creditor, at the request of the debtor, or both.” But in Seaman v. Whitney, the debtor was the depositor of the fund, for which the suit was brought. He placed the funds in the hands of an agent, and subsequently withdrew them ; and in this essential particular, that case is also different from the present.
On the whole, we conclude that where a debtor remits money to a third person, with a direction to pay it to his creditor, and the latter, upon being informed of it, calls upon the remittee, who then positively promises to pay such money to the creditor, it is a valid promise. From and after such promise, the relations of the parties are changed. The remittee ceases to be the mere agent of- the remitter, liable to have the fund withdrawn from his hands by the countermand of the latter. Thenceforth, he is the depositary of,the creditor’s money, holding it for. his use, and liable to him for it.(a)
The motion for a new trial must be denied.

 In The Delaware and Hudson Canal Co. v. The Westchester County Bank, (4 Denio, 97,) it was decided, that an action might be maintained on a promise made upon a valid consideration by the defendant to a third person, for the benefit of the plaintiff, though the plaintiff himself was not privy to the consideration. Thus, where G. & S., being indebted to the plaintiffs, placed a bill of exchange in the hands of the defendants for collection, who, upon consideration thereof, under- *338 tool? to collect it, to pay the amount when collected to the plaintiffs in satisfaction of their debt against ,G. & S., and the defendants had collected the bill; it was held, that the plaintiffs could maintain an action against them on that promise,